# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-1327V

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                 *
SILVIA AGUAYO,                   *      Chief Special Master Corcoran
                                 *
                                 *
        Petitioner,              *      Filed:  April 20, 2026
                                 *
    v.                           *
                                 *
SECRETARY OF HEALTH              *
AND HUMAN SERVICES,              *
                                 *
        Respondent.              *
                                 *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DAMAGES DECISION[1]

On August 16, 2023, Silvia Aguayo filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petition (ECF No. 1) ('Pet.") at 1. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as the result of an influenza ("flu") vaccine administered on September 29, 2022. Pet. at 1. The matter was originally assigned to the Special Processing Unit (the "SPU"), but the parties could not resolve the claim. The case was subsequently transferred out of SPU to another special master, before being reassigned to my non-SPU docket. *See* Order Reassigning Case, dated Feb. 6. 2025 (ECF No. 31).

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

For the reasons set below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled to compensation, and I award damages in the total amount of **$37,525.00, representing Petitioner's past pain and suffering and past unreimbursed expenses**.

## I.    Relevant Procedural History

As noted above, this case was initiated in August 2023. The parties engaged in informal settlements discussions for a period of time before reaching an impasse. *See* Status Report, dated Aug. 30, 2024 (ECF No. 26). On October 16, 2025, Respondent filed his Rule 4(c) Report recommending that compensation be denied. *See* Report, dated Oct. 16, 2024 (ECF No. 27). The matter was reassigned out of SPU to a different special master, and the parties were ordered to file briefs for a ruling on the record. *See* Petitioner's Brief, dated Apr. 1, 2025 (ECF No. 33) ("Br."); Respondent's Opposition Brief, dated May 27, 2025 (ECF No. 34) ("Opp."); Petitioner's Reply, dated June 3, 2025 (ECF No. 35). The matter was subsequently transferred to my non-SPU docket, and I held a status conference with the parties, at which time I provided preliminary findings regarding Petitioner's right to entitlement, and ordered the parties to file briefs in support of damages. *See* Petitioner's Damages Brief, dated Nov. 26, 2025 (ECF No. 36) ("Damages Br."); Respondent's Response to Damages, dated Jan. 5, 2026 ("Resp.").

I subsequently scheduled this matter for an expedited hearing, which took place on March 27, 2026. *See* Minute Entry, dated Mar. 27, 2026. I orally ruled on Petitioner's entitlement to compensation, and after hearing argument made an oral damages determination as well. This Decision memorializes those findings/determinations.

## II.    Factual Findings Regarding a Table SIRVA

A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health &*

*Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42. C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a Tdap vaccine. 42 C.F.R. § 100.3(a)(II)(C). The criteria for establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i)  No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

3

(ii)     Pain occurs within the specified time frame;

(iii)    Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv)    No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

B.   Factual Findings on Table Elements

1.   *Petitioner Had No Prior Left Shoulder Condition or Injury*

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and there is nothing in the filed evidence to suggest otherwise.

2.   *Onset of Petitioner's Injury Occurred within 48 Hours of Her Vaccination*

The second requirement for a Table SIRVA is that the onset of shoulder pain began within 48 hours of the subject vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not disputed, nor does the record refute, that Petitioner meets this criterion.

3.   *Petitioner's Pain was Limited to Her Left Shoulder*

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii).

Respondent contests Petitioner's satisfaction of this element. Opp. at 1; Resp. at 10–12. In particular, he argues that Petitioner's "medical records reflect that she had pain in multiple areas outside of her left shoulder, including her neck, upper back, and right shoulder." Opp. at 2, 4–6. He further contends that throughout Petitioner's treatment course, in addition to her reports of left shoulder pain, she reported bilateral wrist and hand pain. *See* Ex. 7 at 41–44, 66–68.

The gravamen of the third QAI criterion is intended to "guard against compensating claims involving patterns of pain or reduced range of motion ["ROM"] indicative of a contributing etiology beyond the confines of a musculoskeletal injury to the affected shoulder." *Grossmann v. Sec'y of Health & Hum. Servs.*, No. 18-0013V, 2022 WL 779666, at *15 (Fed. Cl. Spec. Mstr.

Feb. 15, 2022); *Werning v. Sec'y of Health & Hum. Servs.*, No. 18-0267V, 2020 WL 5051154, at *10 (Fed. Cl. Spec. Mstr. July 27, 2020) (finding that a petitioner satisfied the third SIRVA QAI criterion where there was a complaint of radiating pain, but the petitioner was "diagnosed and treated solely for pain and limited range of motion to her right shoulder"); *Cross v. Sec'y of Health & Hum. Servs.*, No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Jan. 6, 2023) (finding that "despite the notations of pain extending beyond the shoulder, Petitioner's injury is consistent with the definition of SIRVA and there is not preponderant evidence of another etiology").

Respondent's analysis of the medical records reporting pain beyond Petitioner's left shoulder is "unduly focused on just a few initial notations." *See Overton v. Sec'y of Health & Hum. Servs.*, No. 21-2286V, 2024 WL 1699205, at *7 (Fed. Cl. Spec. Mstr. Mar. 20, 2024). There is thus a preponderance of evidence that Petitioner's pain was limited to her left shoulder. First, it appears that Petitioner had a pre-existing history of bilateral pain and swelling in her hands and wrists, which was ultimately attributed to "an overuse of injury, given her twenty-year history of clerical work" to which she was encouraged to use wrist splints and NSAIDs to manage. *See* Ex. 2 at 382, 431–32, 482, 488, 490.

Second, as to Petitioner's reports of pain and burning in her right upper back and across her should, neck, and upper back, I have previously found that claims involving musculoskeletal pain *primarily* occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim remains that a vaccine administered to the shoulder primarily caused pain there. *See,* e.g., *Cross v. Sec'y of Health & Hum. Servs.*, No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Jan. 6, 2023). And much of Petitioner's treatment and imaging was specifically for a left shoulder injury. Thus, the medical records do not present evidence of the kind of "extra-shoulder, competing symptoms" more suggestive of another etiology or source of Petitioner's pain. *Belvins v. Sec'y of Health & Hum. Servs.*, No. 21-385V, 2024 WL 1009562, at *6 (Fed. Cl. Spec. Mstr. Jan. 12, 2024).

### 4. *There is No Evidence of Another Condition or Abnormality*

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contend that Petitioner fails to meet this criterion, and there is no preponderant evidence in the filed record to suggest otherwise.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that

5

Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received the flu vaccine intramuscularly in her left shoulder on September 29, 2022, at Kaiser Permanente Antelope Valley Medical Offices in Lancaster, California. Ex. 1 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 4 at ¶ 6; Section 11(c)(1)(E) (lack of prior civil award). As stated above, I have found that the onset of Petitioner's left shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occurred within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA. Additionally, it is not disputed that Petitioner has established the six-month severity requirement. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## III.    Damages

The parties have also briefed damages in this case, which are limited to a request for an award for past pain and suffering and unreimbursed medical expenses. Petitioner requests $65,000.00 for past pain and suffering and $525.00[4] in unreimbursed medical expenses. Damages Br. at 7. Respondent proposes an award of no more than $35,000.00 for past pain and suffering. Resp. at 19.

### A.    Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages, and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections VII (subsections A and B) of *Crawford v. Sec'y of Health & Hum. Servs.*, No. 19-0544V, 2024 WL 1045147, at *20–21 (Fed. Cl. Spec. Mstr. Feb. 5, 2024).

---

[4] Respondent does not contest the requested $525.00 in out-of-pocket expenses by Petitioner. *See* Resp. at 8, n.7.

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22–23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

B.      Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of the injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Citing two prior damages determinations (*Clendaniel* and *Langner*),[6] Petitioner requests no less than $65,000.00 for past pain and suffering. Damages Br. at 7. Here, Petitioner's treatment course spanned approximately nineteen months and consisted of an MRI, one prescription medication, three corticosteroid injections, and a total of twelve PT appointments. *Id.* at 6; Resp. at 15.

Respondent, by contrast, submits that the lesser award of $35,000.00 is appropriate. Resp. at 17–19. Respondent argues that Petitioner experienced very mild limitations in ROM, sought only conservative treatment, and that her treatment course included multiple gaps. *Id.* at 13–15. Respondent cites two cases wherein Petitioner was awarded $37,500.00 and $45,000.00 for a SIRVA as support for his proposed figure. *See Piccolotti v. Sec'y of Health & Hum. Servs.*, No. 20-135V, 2023 WL 3165383 (Fed. Cl. Spec. Mstr. Nov. 14, 2022) (awarding $45,000.00 for past pain and suffering); *McGraw v. Sec'y of Health & Hum. Servs.*, No. 21-72V, 2024 WL 1160065 (Fed. Cl. Spec. Mstr. Feb. 15, 2024) (awarding $37,500.00 for past pain and suffering).

---

[5] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health Hum. Servs.*, No. 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[6] *Clendaniel v. Sec'y of Health & Hum. Servs.*, No. 20-0213V, 2021 WL 4258775 (Fed. Cl. Spec. Mstr. Aug. 18, 2021) (awarding $60,000.00 for pain and suffering); *Langner v. Sec'y of Health & Hum. Servs.*, No. 20-1965V, 2024 WL 3422749 (Fed. Cl. Spec. Mstr. June 11, 2024) (awarding $60,000.00 for pain and suffering).

The medical records establish that that Petitioner suffered a mild SIRVA for approximately 20 months. She sought treatment two weeks after her vaccination, and her pain was consistently reported as five and seven on a ten-point scale. However, her treatment was very conservative, consisting of an MRI, twelve PT sessions, and three steroid injections. Further, the diagnostic testing revealed a mild injury—mild tendinosis with *no* signs of bursitis. *See* Ex. 2 at 794–95.

The overall severity of the injury at issue herein is thus not high enough to justify the $65,000.00 requested by Petitioner. I note that the SIRVA cases cited by Petitioner otherwise involved more extensive treatment and did not include any treatment gaps. For example, the records demonstrate Petitioner's treatment course included *two* protracted gaps (a three-month gap from November 2022 to February 2023, and a five-month gap from November 2023 to April 2024). Such gaps underscore the mildness of the SIRVA at issue, since they corroborate the conclusion that limited treatment was required for a likely-mild injury.

I further note, however, that the medical records do not indicate any gaps *during* the primary period of Petitioner's treatment. Similarly, I do not give much weight to the gaps following a cortisone injection, as it has been well established that such injections can provide a significant amount of relief to an individual and can oftentimes explain why an individual is not seeking treatment. Thus, an award of $37,000.00 in actual pain and suffering is reasonable herein.

## CONCLUSION

Based on the record as a whole and arguments of the parties, I award Petitioner a lump sum payment of **$37,525.00** (representing $37,000.00 for Petitioner's past pain and suffering, and $525.00 for past unreimbursed medical expenses), to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement. This amount represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a).

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.